# S T A T E   O F   M I C H I G A N
# C O U R T   O F   A P P E A L S

MICHAEL ZAMBRICKI,

        Plaintiff-Appellee/Cross-Appellant,

v

CHRISTINE ZAMBRICKI,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
January 30, 2018

No.  334502
Oakland Circuit Court
LC No.  2014-825089-DO

MICHAEL ZAMBRICKI,

        Plaintiff-Appellee,

v

CHRISTINE ZAMBRICKI,

        Defendant-Appellant.

Nos. 334503; 336782
Oakland Circuit Court
LC No.  2014-825089-DO

Before:  STEPHENS, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In this divorce action, the parties engaged in protracted private negotiations without formal discovery and  signed a Mediated Settlement Agreement (settlement agreement) that was later incorporated into the parties' March 30, 2015 Consent Judgment of Divorce (the Judgment). These consolidated appeals are largely from the circuit court's decisions on post-judgment motions.[1]  In docket number 334502, defendant appeals as of right the circuit court's August 5,

---

[1] *Zambricki v Zambricki*, unpublished order of the Court of Appeals, entered September 8, 2016 (Docket Nos. 334502, 334503); *Zambricki v Zambricki*, unpublished order of the Court of Appeals, entered May 10, 2017 (Docket No. 336782).

2016 opinion and order denying her attorney fees related to plaintiff's nondisclosure of assets. Also in docket number 334502, plaintiff cross-appeals as of right the circuit court's August 5 decision to deny him attorney fee sanctions for the filing of a frivolous action. In docket number 334503, defendant appeals as of right the circuit court's August 12, 2016 opinion and order denying her attorney fees related to filing a September 30, 2015 motion to enforce the Judgment. In docket number 336782, defendant appeals by delayed leave granted the circuit court's August 5, 2016 opinion and order finding that plaintiff fully disclosed the extent of his inheritance monies to defendant. We affirm in all three appeals.

## I. DISCLOSURE OF INHERITANCE ASSETS

### A. STANDARD OF REVIEW

The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. But because we recognize that the dispositional ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable. [*Sparks v Sparks*, 440 Mich 141, 151–52; 485 NW2d 893 (1992)].

### B. ANALYSIS

Both the settlement agreement and Judgment contained provisions calling for the full disclosure of assets. The settlement agreement provided:

**VI.**

**CONCLUDING PROVISIONS**

**26. Full Disclosure.**

By their signatures on this Agreement, Michael and Christine state that each has disclosed to the other all income, debts and assets that each owns or has any interest in - whether held by him or her individually, by both of them jointly, or with any other person or entity for Michael or Christine or for his or her benefit. The property division provisions set forth in this Agreement are intended to be a distribution and allocation of all the property of the parties at the time of entry of the Judgment of Divorce.

Similarly, the Judgment provided:

**FULL DISCLOSURE**

-2-

Each party has represented that they have made a full disclosure of their assets to the other party. If either party should discover undisclosed assets that were owned by the other party prior to the entry of this Judgment of Divorce, then that party owning such undisclosed assets may be sanctioned and liable to forfeit the same to the other party and be responsible for any attorney fees, investigation fees, incurred by the party who discovers the existence of undisclosed assets.

Defendant argues in docket number 336782, that because plaintiff failed to disclose all of his inheritance property, all of that non-disclosed property should be forfeited to her. Defendant relies on *Sands v Sands*, 192 Mich App 698; 482 NW2d 203 (1992), to support her position. In *Sands*, the circuit court ordered the defendant husband "to pay seventy percent of the plaintiff's attorney fees, on the basis of its finding that the bulk of plaintiff's attorney fees were incurred because of 'defendant's devious and deceptive conduct.' " *Id*. at 701. The *Sands* defendant removed documents establishing ownership of assets from his attorney's file, transferred money to relatives, lied to the court regarding stock ownership, and was held in contempt four times. *Id*. at 701-702. On appeal this Court found that the circuit court abused its discretion in failing to impose more extensive sanctions against the defendant. In its opinion, this Court described the defendant's behavior as "reprehensible" not only against "the wronged spouse, but also against the court system." *Id*. at 704. The matter was remanded to the trial court for the determination of the amount of concealed assets and for entry of an order forfeiting all of those assets to the plaintiff. *Id*. at 704-705. The Michigan Supreme Court affirmed the decision regarding forfeiture in defendant *Sands'* case based upon the facts of that case, but specifically declined to adopt a rule requiring automatic forfeiture of non-disclosed assets. It instead pronounced that forfeiture was a remedy to be considered on a case-by-case basis. *Sands v Sands*, 442 Mich 30, 31; 497 NW2d 493 (1993).

Neither the nature nor the extent of the alleged non-disclosure in this case is similar to *Sands*, 192 Mich App 698.[2] More importantly, after an extensive evidentiary hearing the trial court made a finding that there was no non-disclosure. This finding has significant evidentiary support.

A two-day evidentiary hearing was held on the issue of whether plaintiff violated the disclosure provisions of the settlement agreement and the Judgment. The assets defendant claimed were undisclosed were monies inherited by plaintiff at the end of the marriage. Defendant claimed she did no investigation, engaged in no discovery and merely relied on

---

[2] Defendant also argues that the circuit court added an element of "deliberate concealment" to the determination of whether plaintiff to failed to disclose assets. We reject this contention. The court did not rely on a presumption of deliberate concealment in this case, but rather used the term in stating an alternate conclusion. ("Even if, arguendo, the court concluded that Plaintiff failed to disclose his remaining inherited funds it would find-based upon its analysis-Plaintiff rebutted the presumption of deliberate concealment."). In this instance, we find that the court made the statement in reference to the level of conduct in *Sands* and what would be required to find the same persistent and reprehensible attempts to conceal assets and warrant forfeiture here.

figures dictated to her by plaintiff during their negotiations prior to the retention of counsel. She draws the court's attention to a list of assets and argues that that list includes all of the assets disclosed to her by plaintiff. Plaintiff asserted, however, that the disclosures between the parties were not all recorded on the list. During the evidentiary hearing, plaintiff acknowledged the existence of Fidelity accounts defendant claimed he failed to disclose and that they were inherited during the marriage. It is undisputed that those accounts were not on the property disclosure form the parties created. There was a significant dispute as to whether the accounts were orally disclosed or otherwise known to the defendant. Plaintiff testified that the parties decided which accounts would be included in the disclosure. Defendant refuted the assertion that she knew of the undisclosed accounts, but admitted in reference to the items listed on the disclosure form that, "[t]hese are the accounts that we had disclosed for the sake of mediating our agreement." The parties agree that plaintiff deposited $200,000 of his inherited funds into the marital estate. Plaintiff testified that these funds were from his inheritances and were intended to match those inherited funds defendant claimed she contributed. Other than testifying that the $200,000 "seemed like a reasonable amount" and "similar to what [she] would expect," defendant had no explanation for why plaintiff had contributed that amount.

In addition to denying that plaintiff orally disclosed the accounts to her, defendant testified that she did not in fact learn about plaintiff's inheritance because she was denied access to the parties' financial files. In contrast, plaintiff testified that defendant had a key to the marital home many months after the parties' divorce and entered the house when he was away. Defendant admitted she was able to enter the home on one occasion and retrieve account files regarding DTE stocks, and on another occasion, destroy a file plaintiff kept that documented her affair that led to the parties' divorce. The circuit court, as do we, found it significant that the file defendant destroyed was directly next to all plaintiffs' inheritance files.

We defer to the circuit court's determination that plaintiff was the more credible witness regarding the issue of disclosure. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011) ("We defer to the trial court's credibility determinations given its superior position to make these judgments."). The circuit court presided over a two-day hearing devoted to the issue of disclosure and was in a better position to view the demeanor of the parties and make credibility findings in relation to their testimonies. There was considerable discussion and testimony regarding the source of the Fidelity funds. The source of the funds was certainly relevant to the parties' private discussions, deliberations and ultimate settlement of their property distribution. However, since the trial court was only called upon to enforce the agreement of the parties instead of dividing the marital estate, the source of the funds was irrelevant. At no point was the trial court called upon to decide if the parties intended inherited funds to become a part of the marital estate. Defendant's argument for distribution of plaintiff's inheritance is based entirely on the provisions allowing for forfeiture of undisclosed assets in the settlement agreement and Judgment. According to *Sands*, however, "[t]here is no automatic rule of forfeiture." *Id*. at 31. Neither does the language of either the settlement agreement or the Judgment provide for the mandatory forfeiture of undisclosed assets to the other party. Instead, each document provides that the non-disclosing party may be sanctioned by having to forfeit undisclosed assets to the discovering party. Because we cannot find that the trial court's fact finding, that there was disclosure and knowledge of the assets, was clearly erroneous, without factual support, or inequitable or unjust, we affirm the decision to deny a *Sands'* forfeiture here.

## II. EVIDENCE ADMISSIBILITY

### A. STANDARD OF REVIEW

"We review for an abuse of discretion a trial court's decision to admit evidence. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 689; 777 NW2d 511 (2009) (internal citation omitted).

"Consent judgments of divorce are contracts and treated as such. We review de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous." *Andrusz v Andrusz*, 320 Mich App 445, ___; ___ NW2d ___ (2017) (internal citation omitted).

### B. ANALYSIS

In docket number 336782, defendant additionally argues that the circuit court abused its discretion by admitting plaintiff's testimony regarding their negotiation discussions to contribute matching amounts of inheritance money and in expanding the scope of the evidentiary hearing to include testimony regarding her inherited assets. Defendant contends that plaintiff's testimony was improper parol evidence.

> Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous. *Central Transport, Inc. v. Fruehauf Corp.*, 139 Mich.App. 536, 544, 362 N.W.2d 823 (1984). A prerequisite to the application of this rule, however, is a finding that the parties intended the written instrument to be a complete expression of their agreement. Thus, extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on the threshold question of whether the written instrument is such an integrated instrument. [*Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580; 458 NW2d 659 (1990)].

The court did not vary the written contract. The goal of the lengthy evidentiary hearing was to determine if the disclosure terms of the settlement agreement and Judgment were violated. Since a central issue was what was disclosed outside of the presence of counsel or the court, it was necessary to delve into the nature of the parties oral representations to one another during the process. Nothing in either document states that the property distribution list was itself exhaustive of the marital property. The issue of whether plaintiff listed all of his inherited property on the list was probative of whether the parties' written list was the full record of all property disclosed or known to parties. In other words, defendant's inherited property, and the myriad discussions over the protracted pre-settlement phase of the case was relevant evidence. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Additionally, we emphasize the non-mandatory nature of the *Sands*' forfeiture principles. Even if the court there had found non-disclosure, it would have been required to determine what

level of sanction, if any, was appropriate. Certainly, if both parties in *Sands* failed to disclose assets, a determination that neither should be sanctioned would have been appropriate. It was the fact that the *Sands'* defendant engaged in a pattern of non-disclosure and took affirmative acts to divert and conceal funds that led to the decisions to forfeit the asset. To that end, it was incumbent on the trial court to allow a fulsome factual development so that an equitable remedy could be fashioned for any violation of the non-disclosure provisions.

## III. ATTORNEY FEES

### A. STANDARD OF REVIEW

We review for an abuse of discretion a court's decision to grant or deny attorney fees and its related findings of fact for clear error. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). We also review for an abuse of discretion the trial court's decision to hold an evidentiary hearing. *People v Franklin*, 500 Mich 92; 894 NW2d 561 reh den 500 Mich 1025; 897 NW2d 168 (2017). "An abuse of discretion occurs when the result falls outside the range of principled outcomes. *Cassidy v Cassidy*, 318 Mich App 463, 479; 899 NW2d 65 app den 902 NW2d 623 (Mich 2017), and app den 902 NW2d 623 (Mich 2017).

### B. ANALYSIS

Defendant argues in docket number 334503, that the court abused its discretion in denying her an evidentiary hearing to determine the amount of attorney fees due to her for having to file multiple motions to enforce the Judgment. Our review of the record does not support defendant's contention that she was promised an attorney fee evidentiary hearing. There is no order entered or ruling by the court that attorney fees were granted. Defendant requested attorney fees under MCR 3.206(C)(2)(b) for the September 30, 2015 enforcement motion. The circuit court's September 30 order ordered defendant to send plaintiff an itemization of her attorney fees and that if plaintiff objected to the reasonableness of the fees, the matter would be "referred to the court." This language merely allowed for final disposition by the court and did not promise a hearing on attorney fees. Thereafter, the court consistently reserved the issue of attorney fees until after resolution of the inherited property issue. There is no court rule or case that requires the court to hold an evidentiary hearing in this instance. "Generally, a trial court should hold an evidentiary hearing when a party is challenging the reasonableness of the attorney fees claimed." *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). Had the court found that fees were warranted due to plaintiff's willful non-compliance, a hearing would have been presumptively required on the preserved challenge to their reasonableness. In this case, however, the court determined that no fees were to be awarded, thereby eliminating the need to review any item for reasonableness.

## IV. SANCTIONS

### A. STANDARD OF REVIEW

"We review the trial court's decision to impose sanctions for an abuse of discretion." *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 450; 540 NW2d 696 (1995). "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Cassidy*, 318 Mich App at 479.

## B. ANALYSIS

Also relevant to the issue of nondisclosure is defendant's argument in docket numbers 334502 and 336782 that the circuit court abused its discretion when it denied her attorney fee sanctions for plaintiff's failure to disclose the full extent of his inherited assets.

As discussed above, and in relation to docket number 334502, we agree with the circuit court's determination that plaintiff disclosed and therefore disagree that defendant would be entitled to sanctions based on nondisclosure. We lack jurisdiction to address defendant's additional argument presented in docket number 336782, that plaintiff failed to disclose, because under MCR 7.202(6)(a)(iv), when the appeal is from a postjudgment order regarding attorney fees or costs, the appeal "is limited to the portion of the order with respect to which there is an appeal of right," MCR 7.203(A)(1), and defendant's appeal of the propriety of the court's August 5, 2016 decision involving plaintiff's disclosure in docket number 336782 was by delayed leave granted.

In docket number 334502, plaintiff cross-appeals the circuit court's decision to deny him sanctions when, he argues, defendant's motion claiming non-disclosure was frivolous under MCL 600.2591. Under the statute, attorney fees may be awarded in a civil action when either:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a)].

Plaintiff argues that defendant's only intention in bringing the motion to disclose assets was to harass him and that because defendant knew the extent of his assets, she could not have believed that the facts supported that plaintiff failed to disclose. The court held that while it "may question Defendant's motives, and the timing of her action, it cannot find -- as a matter of law -- that Defendant's position and use of judicial process meets any of the statutory requirements." The record supports that the court's decision was within the range of principled outcomes. In this case, defendant's failure to prevail on the merits of her motion did not render her motion frivolous. From the record, it does not appear that defendant brought the motion to disclose for the purposes of harassing, embarrassing or injuring plaintiff, but rather to learn the full extent of plaintiff's inheritance and as an attempt to enlarge the marital estate. Defendant had a reasonable basis to believe that plaintiff had inherited funds that he had not yet disclosed. Plaintiff testified that while defendant knew he was receiving inheritance distributions, he told defendant the sum of his inheritance was "none of her business." It would have been prudent for defendant to file

the motion sooner; however, the timing does not establish anything other than a belated attempt to learn all of plaintiff's assets.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly